# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

MAR 1 0 2025

ARTHUR JOHNSTON
BY_____ DEPUTY

| | | |
|---|---|---|
| JERRY BROW | * | |
| | * | |
| Plaintiff, | * | |
| | * | Case No. 1.25cv05H50-BWR |
| LILIANA SALINAS RAMOS DE BROW | * | |
| AKA LILIANA BROW | * | |
| | * | |
| Defendant, | * | |

## COMPLAINT

## JURISIDICTION AND VENUE

1.     Plaintiff Jerry L. Brow is a United States of America (USA) citizen residing in Jackson Country in the state of Mississippi, USA and is over the age of 19 years.

2.     Defendant Liliana Salinas Ramos de Brow - As Known As within the United States of America (Liliana Brow) is a dual National Citizen of United States of America (USA) and of the Country Peru, is currently residing abroad in the country of Peru over the past 4 years. US Passport # 505634743, Peruvian Identification (DNI) 04622549 and is over the age of 19 years.

3.     Defendant was crossing the boarders from Bolivia to Peru over the years of 2020 through 2022, Defendant provided false information to the Peruvian government authorities indicating the Defendant had lived in Bolivia from November 26, 2020 through November 5, 2021 which was untruthful.  Defendant is currently being criminally charged in Peru for providing false information to the Peruvian government

1

Case No. SGF: 27006155001-2024-768-0, currently Defendant has re-established permanent residency in Peru and can be served summons upon this address: Calle Cruz Verde #425 Cercado Arequipa, Peru

4.      Defendant can be located and legally served at the aforementioned address.

5.      This action arises under 28 US Code 1332 Diversity of Citizenship.

6.      Supplemental jurisdiction of this court exists for the State law claims stated herein, each arising out of violations of State and Federal law.

7.      The amount in controversary herein exceeds the sum of $75,000.00 exclusive of interest and costs due to a time period of years of Fraud & Defamation of the Defendant.

8.      A substantial part of the events or omissions giving rise to the claims occurred Peru, in the State of Mississippi and the State of Michigan.


## FACTS AND BACKGROUND

1.      Plaintiff and Defendant were married and lived together bearing a single child, male born 12-07-2007 named Jerry Christopher Brow (JCB) for a period of 13 years until Covid epidemic commenced in March 2020.

2.      Prior to marriage to the Defendant, the month of January 2007 Plaintiff informed Defendant of problems with the law as a youth at age 17 which lead to incarceration, that he was very sorry for what he had done and had paid his debit to society over and over again, had done everything to live a law abiding life ever since, dedicated his life to his family, his construction business and non profit work over twenty five years prior to the marriage with Defendant.

3.        Until 2019 Plaintiff, Defendant lived together with their child JCB as a family
and traveled back and forth from the USA to Peru.

4.        March 2020 Plaintiff was stranded in the State of Mississippi until November
2020 during this time frame Peru closed it's boarder to the world due to the Covid
pandemic, when Peru closed its boarders with all countries to prevent the spread of
Covid.  Plaintiff could not travel back to Peru until the boarder was open.

5.        In June 2020 Defendant called Plaintiff in June 2020 numerous occasions in
the USA demanding Plaintiff to send $2,500.00 to Defendant to hire professional armed
security guards to prevent Plaintiff's brother Juan Flor Ramos (Juan) half owner in the
property where Defendant is living to prevent her brother from re-entering the residence
located at Calle Cruz Verde 425 Cercado Arequipa Peru where Juan's pregnant wife
Carla was located in his bedroom for a period of five (5) consecutive days.

6.        Defendant's brother Juan also called Plaintiff several occasions indicating
Defendant was holding his wife Jessica Carla Huayllazo Cancapa (Carla) in his bedroom
after Defendant kicked him out and blocked his re-entry intentionally turned off
electricity and water to the brother's bedroom and locked Juan and his 3 year old
daughter Brianna into the street for the same period of time five (5) consecutive days,
Defendant's brother Juan was only permitted to drop off food in paper bags at the front
door of  425 Calle Cruz Verde for his wife Carla for those five days.

7.        Carla, the defendant's brother's wife after five days of being detained by the
Defendant still inside the Defendant's brother's bedroom with the assistance of
Defendant's father Cesar Salinas Malaga (Cesar), the Defendant demanded to her brother
Juan to sign an agreement in writing for the release of his wife Carla, Juan would have to
agree to relinquishing his half ownership rights to the property over to the Defendant and
the Defendant Liliana Salinas Ramos would then allow the release of his wife Carla.
Which this did in fact happen.   Juan signed the agreement and his wife was released.

8.    It was during this exact date July 4, 2020 when Plaintiff over the phone overwhelmingly disagreed with the actions of his wife the Defendant, the Plaintiff then informed the Defendant over the phone of the his non agreement and appalled manner in how she treated her brother, his wife and their 3 year old daughter Brianna during the five days Carla was detained by the Defendant. This was when the Defendant first began to threaten Plaintiff she would use his criminal past now forty years ago if Plaintiff did not support the Defendant against her brother Juan, thus began the Defamation, Libel and Fraud. Juan, the defendant's brother, uncle and Godfather to JCB has also been alienated from JCB since this atrocious event.

9.    On October 21, 2020 Defendant did willfully and spitefully without the knowledge of the Plaintiff instructed in writing to the Plaintiff's web page company to take down and remove Plaintiff's business website KusiResorts.com to prevent Plaintiff from operating a business in Peru and having income.  These deliberate willful actions by the Defendant took place in Peru while the Plaintiff was located in the USA due to Peru's restrictions to close the boarder because of the Covid pandemic, Defendant knowing the Plaintiff would not be able to suspect nor prevent the malicious actions of the Defendant in retaliation of not supporting the detainment of her brother's wife Carla, Defendant took down Plaintiff's website for multiple reasons, not supporting her or agreeing with the illegal and un moral actions of the Defendant in June 2020 holding Defendant's brother's wife Carla captive in brother's Juan bedroom for five days while brother Juan was forced to live in the streets with his 3 year old daughter until demanding brother to provide a legal document to the Defendant transferring his legal rights of the joint ownership of the property to the Defendant and to prevent Plaintiff from generating income in Peru..

10.    On 11-26-2020 Plaintiff & Defendant traveled with their son JCB to Bolivia for their son's 3 Cosat tennis tournaments, and after the first two tennis tournaments of their son, Plaintiff had business to attend to in the USA, then obtained through the Peruvian Consulate office in Bolivia, a written permission for their child to travel legally with his mother, the Defendant by air to Peru, then provided Defendant $3,000.00 USD in the form of $200.00 dollars in Bolivian currency and $2,800.00 dollars in US currency

and air reservations as verified by messages using Whatsapp. At the end of the 3rd tennis tournament, the Defendant took their minor child at age 12 and personally chose to illegally cross the boarder via river Desaguadero from Bolivia to Peru without passing through any immigration boarder control and left the country Bolivia illegally entering Peru, violating USA laws, Bolivian laws and Peruvian laws.

11.      December 1, 2020 Plaintiff returned to Peru and later learned Defendant's illegal activity of crossing the boarder from the country of Bolivia to Peru with his son, and Defendant intentionally leaving Plaintiff's son in the Bolivian immigration system even though her son was always living in Peru with her.

12.      In November 2021 Defendant once again illegally crossed the boarder from Peru to Bolivia for another tennis tournament with Plaintiff's son, it was at this time the Defendant went to the Peruvian Consulate office in Cochabamba Bolivia and presented an official request in writing for only her to leave Bolivia and return to Peru, indicating to the Peruvian Consulate she had lived in Bolivia from November 2020 through November 2021, which was not truthful and deceptive, Defendant also informed the Peruvian Government that her son JCB was with an aunt living in Arequipa, Peru which was deceitful when in fact he was playing tennis in an international Junior Cosat tennis tournament in the same city of Cochabamba Bolivia at the exact same time the Defendant submitted the official written request to the Peruvian Consulate.  At this time Plaintiff's son JCB was still registered as living in Bolivia since November 2020.

13.      Numerous efforts by Plaintiff of visiting Bolivia's Embassy and their immigration office in Bolivia with the assistance of the Peruvian Consulate's attorney requesting liberation of Plaintiff's son JCB from Bolivia since he was always living in Peru, the Bolivian immigration informed the Peruvian Consulate Attorney and the Plaintiff that the minor child would have to be present "physically" to leave the country and if the mother would not allow the child to return to Bolivia to leave the country legally then the Bolivian government could not remove the minor child from their immigration system as though the child was continually residing in the country of

Bolivia. The pain and suffering the Plaintiff has went through over the past years trying to liberate his son from Bolivia with no avail since the Defendant would not take any measures to remove her son from the Bolivian immigration system while her minor son JCB continued to live in Peru.

14.     Confirmation of Defendant's plan revealed, January 2021, Plaintiff obtained an audio of the Defendant conversing with her X boyfriend Lucho, planning on her selling her mansion, the property located at Calle Cruz Verde #425 Arequipa, Peru and escaping to live in Santa Cruz Bolivia to live with Plaintiff's son due to the Plaintiff and her brother Juan were still talking, thus explaining why Defendant's intentionally left her son JCB in the Bolivian immigration system while he lived and went to school in Peru. The Bolivian law stipulates that all alien immigrants residing in Bolivia for two (2) years are granted residency.

15.     Plaintiff reported this plan of the Defendant to the Unites States Embassy in Lima, Peru and to the Peruvian Authorities. Peruvian criminal charges are pending against the Defendant for the false information she provided to the Peruvian Consulate indicating she lived in Bolivia from November 2020 through November 2021 and intentionally with reckless endangerment of illegal boarder crossings with a minor and leaving plaintiff's minor child in the Bolivian immigration system while living in Peru for more than 2.5 years.

16.     Throughout 2021 Defendant commenced a ongoing defamation smear campaign at Plaintiff's son's school informing staff and students of Plaintiff's criminal record which the Defendant modified facts and added false allegations of crimes by the Plaintiff that he was never charged nor ever convicted of in Defendant's efforts to isolate Plaintiff's son from his father the Plaintiff, the school acting on Defendant's defamation and commenced mal treatment of Plaintiff, denying rights of a father not to be recognized and did not allow the child's father to have anything to do with his child while Plaintiff's child attended school in Arequipa, Peru.

17.      On January 2022, Defendant in a video with the Plaintiff, Defendant admits to premeditation of defamation and threatened Plaintiff of the promise to Disparage Plaintiff to everyone the Plaintiff knew because of his communication with her brother Juan and Carla that she would expose Plaintiffs past criminal record to everyone Plaintiff knows.

18.      From 2021 the Defendant has intentionally and maliciously isolated, alienated Plaintiff's son from his father the Plaintiff and has deliberately filed numerous false, fabricated accusations against Plaintiff using Plaintiffs past doctored criminal history which the Defendant by fraud and deception distorted the criminal history to reflect other crimes the Plaintiff never committed. The Plaintiff was never charged or convicted and Defendant used this campaign to destroy the reputation and relationships of the Plaintiff.

19.      Defendant also isolated, alienated all of Plaintiff's family and friends from Plaintiff's son including the only living 82 year old grandmother Sally Brow from the USA, also defaming Sally Brow, indicating she too has a criminal record which she does not and never had.

20.      January 2022, Plaintiff's son JCB in a video personally indicated and expressed the control by fear his mother the Defendant had over him, the minor child at age 13 indicating the fear he personally experienced while being forcibly present during the illegal and unmoral actions of the Defendant his mother and Defendant's father Cesar. The power the mother has to throw out her own brother, his uncle Juan into the street, while holding his aunt Carla in the bedroom twelve feet away from his own bedroom, in this preserved video, the minor 13 year's old child responds to his father seeking to enjoy a small amount of time on the weekend with his son, the son responds: "Dad I can't go with you, if I go with you and mom locks you out I can open the door, if I leave with you mom will kick me out to the streets too!" The ongoing trauma the Plaintiff and Plaintiff's minor child JCB is still experiencing after experiencing the power and control of the Defendant with approval and assistance of Defendant's father Cesar.

21.       On February 8, 2022 defendant did willfully and maliciously file a false police report indicating Plaintiff had abandoned his son and the marriage at the 425 Cruz Verde Arequipa property, Defendant destroying a padlock on Plaintiff's bedroom door to remove 90% of Plaintiff's personal clothing and other items.  Plaintiff has a written correspondence from the Peruvian immigration department, authorized Plaintiff to go to the USA and return back to Peru Plaintiff's legal address (425 Cruz Verde, Arequipa) in Peru within 30 days, which Plaintiff abided by the Peruvian government's guidelines. This false police report generated a criminal charge against the Defendant set for trial in October 2025 facing 2 years eight months to four years of incarceration.  It was during the declaration in this criminal charge process against the Defendant when the Defendant once again provided false defamatory references of Plaintiff's criminal past as outlined in the fraudulent document to justify her illegal actions. Case No. 501-2022-1189, and false declaration case 501- 2023-677.  The Defendant used this false police report of abandonment in numerous locations, including but not limited to the child custody case the Plaintiff filed along with plaintiff's criminal history.

22.       Plaintiff filed for Divorce from Defendant and was granted September 2022.

23.       Plaintiff filed for joint custody of minor child in Peru in 2022 only to be denied by the Peruvian court, stipulating any and all fatherly rights to the child were denied. The Defendant presenting false accusations, false police report such as the false Abandonment police report the Defendant created, and informing the court of Plaintiffs criminal history of 35+ years ago.  The influence by the Defendant to the Court seeking the Court to believe all accusations manufactured by the Defendant and seeking to deny all custody to the Plaintiff of his son JCB.

24.       Plaintiff sought injunctive relief and a court Order granting visitation of said minor child JCB was issued, with said Court Order in hand Plaintiff made numerous attempts to see child and was even accompanied by Peruvian Police for several months to enforce the Court's order of Visitation, at no time did Defendant allow said minor child to see his father the Plaintiff, establishing no compliance of Court's authority and fatherly

rights, the gate keeping, alienation of said minor child, continues currently, the Defendant has not abided by any court ruling in Peru. Exp. 734-2023-83-0401-JR-FC-O2

25.      Plaintiff and Plaintiff's mother, the only living grandmother to Plaintiff's son JCB went to great lengths to see JCB, including seeking judicial assistance by the Peruvian court to see her grandson, with no avail, the Peruvian court denied grandmother any visitation and to this day the alienation, gate keeping continues to occur between Plaintiff, Plaintiff's mother and her grandson the Plaintiff's son in addition to all family and friends in the USA. The Defendant's use of the fraudulent document and defamation to date has been successful.

26.      January 2021 Plaintiff obtained a video outlining Defendant's excessive ongoing physical and psychological violence upon the Plaintiff's son JCB

27.      February 21, 2021 plaintiff obtained Protection Order from the Peruvian Superior Court prohibiting Defendant (Liliana Salinas Ramos) from any continuing acts of physical violence or psychological acts of violence against the Plaintiff or Plaintiff's minor child JCB reference file 03052-2021-0-0401-JR-FT-08

28.      On March 9, 2022 The Peruvian Court issued another order to Defendant to not block the Plaintiff from seeing his son and access to his property and to provide keys to Plaintiff within 48 hours, to date of this federal complaint three (3) years later, the defendant has never allowed Plaintiff to see his son or obtain his personal or business property. Case No. 04087-2022-0-0401-JR-FT-08

29.      April 2022 Defendant was criminally charged with disobeying courts order, the court's Order allowed Plaintiff access to his son and property, to date Defendant has never obeyed the Court's Orders Case No.237 -2022-70-0401-JR-PE-02

30.     On March 5, 2022 Defendant's father Cesar Salinas Malaga did willfully threaten Plaintiff with a pistol inside the Peruvian Police Station in Arequipa, Peru, this physical violent attack by Defendant's father was witnessed and audio taped.

31.     On April 25, 2022 Protective Order was granted for the Plaintiff prohibiting any additional acts of physical violence or psychological violence to Plaintiff by Defendant's father Cesar Augusto Salinas Malaga. Case No. 07 21 6-2022-0-040 I -J R- FT- I 3

32.     On November 15, 2022 The Peruvian Court provided a restraining Order for the Plaintiff against the Defendant's father, Cesar Augusto Salinas Malaga not to block Plaintiff's entry to son or personal property. Case No. 07216-2022-57-0401-JR-FT-13

To the date of this filing of this Federal Claim, Plaintiff has not been able to see his son, share life with his son, has been defamed to a point of complete and utter destruction of his life by the Defendant.

## **CLAIM ONE**
### **Malicious misuse of a forged altered Government Document**

1.  The Plaintiff reavers and adopts the foregoing paragraphs, and incorporates the same by reference as if set out fully therein.

2.  Defendant on June 28, 2023 did maliciously present a forged and fraudulent full colored document, a United States of America official looking document with the State of Michigan State Police symbol located on the face of the document, provided false information of the Plaintiff with the use of a government symbol with the intent to deceive 20,000 + members of the Club International Arequipa, Arequipa Peru, that the document presented by Defendant was genuine looking as if the document came from a government agency the State of Michigan, USA, Defendant acted to cause Plaintiff to be blacklisted, and expelled from said

aforementioned club using said fraudulent document and false accusations for personal gain, due to a failed marriage after 13 years, due to communications between Plaintiff and Defendant's brother Juan and wife Carla, said motive to destroy Plaintiff, Defendant's ongoing plan to separate Plaintiff from his son JCB in every manner as to the intention for such criminal behavior by the Defendant.

3. Defendant has been criminally charged in Peru with a felony Against the public faith in the form of falsification of documents Case No. SGF: 503-2024-3303, this criminal case is still ongoing.

4. The false complaint submitted by Defendant on June 28, 2023 to the Club International Arequipa, provided false accusations that was investigated by an independent research effort by the club, all accusations by Defendant were found to be without merit and dismissed the request to remove Plaintiff from the club by the Defendant in 2024.

5. Plaintiff continues to be blacklisted, ignored by members at the club and from all of associations via families, friends and business contacts from the intentional Defamation of the Defendant. Since 2024. Several members of the Club informed Plaintiff to be careful that Defendant continues seeks ways to set up the Plaintiff. The Plaintiff lives in fear that at any time, the Defendant will use the fraudulent document with false accusations to set him up.

6. Defendant did maliciously, vengefully use the fraudulent document with false criminal information of the Plaintiff intended to manipulate the club members with the concept of a previous criminal record to justify any allegation Defendant contrived.

7. On July 18, 2024 the Michigan State Police provided a detailed written response regarding the fraudulent document the Defendant presented to the Club Arequipa to influence everyone whom read the document, Commander Darren

Green of the Michigan State Police wrote: "In my nearly 24 years of law enforcement experience and career with the Michigan State Police, the document provided which list your "criminal history" does not appear in the normal format. Any law enforcement agency in the State of Michigan has access to the Law Enforcement Intelligence Network (LIEN) and therefore can run a criminal history on a subject for various purposes, which needs to be documented accordingly. When a criminal history is run, the resulting document does not contain a "Logo" for the respective department, and therefore it looks like a very generic document."

Commander Green continues to write: "It is clear to me the document provided is unlike any criminal history report I have ever see, and subsequently I question it authenticity as coming from a legitimate law enforcement agency. It is an absolute possibility the Michigan State Police logo which appears at the top of the document could have been "cut and pasted" onto that document."

## CLAIM TWO
## Fraud Per Se

1. In January 2024 Defendant did viciously present the same fraudulent document again with intent to deceive the Peruvian Government in another attempt to separate Plaintiff from his son, the misuse of this altered US government document with a government symbol of the Michigan State Police intending to mislead the Peruvian Prosecuting Office by a filing of a false accusation towards Plaintiff by the Defendant. Ultimately Defendant's complaint was investigated and dismissed by the Peruvian Prosecutors Office. Defendant's creation of this fraudulent document with an official symbol of a United States government agency, the Michigan State Police was intentionally used to influence the prosecuting attorney of the State criminal court of Arequipa, Peru as the recipient of said document believing the document was a genuine government

issued communication from the State of Michigan Police from the United States of America, Prosecutors believed what ever the Defendant declared in her complaint must be true. Plaintiff also suffers from another public document being created by the Defendant to injure the Plaintiff with fraudulent information presented by the Defendant in a public manner.

2.    Defendant has been criminally charged with a criminal felony charge of Use of a false document case No. 503-2024-3305-0 for the aforementioned false accusation by the defendant, this case is ongoing in the country of Peru.

3.    The Michigan State Police provided a detailed written response to the fraudulent document the Defendant presented to influence anyone whom read the document, Commander Darren Green wrote: "In my nearly 24 years of law enforcement experience and career with the Michigan State Police, the document provided which list your "criminal history" does not appear in the normal format. Any law enforcement agency in the State of Michigan has access to the Law Enforcement Intelligence Network (LIEN) and therefore can run a criminal history on a subject for various purposes, which needs to be documented accordingly. When a criminal history is run, the resulting document does not contain a "Logo" for the respective department, and therefore it looks like a very generic document.

Commander Green continues writes: "It is clear to me the document provided is unlike any criminal history report I have ever see, and subsequently I question it authenticity as coming from a legitimate law enforcement agency. It is an absolute possibility the Michigan State Police logo which appears at the top of the document could have been "cut and pasted" onto that document."

4.    Plaintiff suffers from public humiliation, anxiety, depression and pain due to the extent the Defendant has acted in a premeditated vengeful manner to prevent the Plaintiff to be with his son. This tool, the Plaintiff's past criminal history of

nearly 40 years ago and fraudulent information being distributed everywhere to destroy the image of the Plaintiff to the Plaintiff's son JCB and others privately and public ally.

## CLAIM THREE

1.  Defendant did willfully and maliciously slander Plaintiff utilizing same fraudulent document to the Peruvian Criminal Court, defamation by slander alleging the supporting point of view of said fraudulent document, Peruvian authorities once again investigated false accusations of the Defendant for using the fraudulent document as a basis for the credibility of the Defendant, only after charging Plaintiff, the prosecuting attorney could not substantiate any of the claims laid forth in writing and verbally by the Defendant. These actions by the Defendant has caused damage to the reputation of the Plaintiff, Plaintiff continues to experience ongoing emotional distress, with the Defendant's intent to dishonor and condemn Plaintiff in the eyes of the Prosecuting attorney and all associated staff and court officers with another false accusation case.

2.  Defendant has been criminally charged with a felony for providing a false statement in administrative proceedings, ideological falsehood with improper use of document as truthful  Case No. 501-2024-3907, this case is ongoing in the country of Peru.

3.  The Michigan State Police provided a detailed written response to the fraudulent document the Defendant presented to influence anyone whom read the document, Commander Darren Green wrote: In my nearly 24 years of law enforcement experience and career with the Michigan State Police, the document provided which list you "criminal history" does not appear in the normal format. Any law enforcement agency in the State of Michigan has access to the Law Enforcement Intelligence Network (LIEN) and therefore can run a criminal

history on a subject for various purposes, which needs to be documented accordingly. When a criminal history is run, the resulting document does not contain a "Logo" for the respective department, and therefore it looks like a very generic document.

Commander Green continues writes: "It is clear to me the document provided is unlike any criminal history report I have ever see, and subsequently I question it authenticity as coming from a legitimate law enforcement agency. It is an absolute possibility the Michigan State Police logo which appears at the top of the document could have been "cut and pasted" onto that document."

## **CLAIM FOUR**

## **(Intentional infliction of Emotional Distress)**

1.      Defendant as of 2021 began a campaign of vengeful DEFAMATION to the Plaintiff by the malicious use of fraudulent documents, false statements and declarations aimed at Plaintiff using the false accusations, use of forged government document against the Plaintiff indicating crimes the Plaintiff never committed or was even charged as a tool to influence others to Blacklist, Banish, Expel, Exclude, Reject and Harm Plaintiff with the use of false claims. These ongoing false claims and actions by the Defendant has caused irreparable damage to the reputation and emotional distress to the Plaintiff, Defendant has intentionally provided such false and misleading information to Plaintiff's son at age 13 (2021) to dishonor, condemn Plaintiff in every effort to destroy the father son relationship between Plaintiff's son JCB and the entire United States of America family of the Plaintiff whereas the Plaintiff's son was born in the State of Mississippi in 2007, defendant's had established retaliation in addition to all people associated with Plaintiff's son in Peru. The Defendant, Mother of minor child now age 17 will still not allow JCB to return to the USA.

2.      The efforts of the Defendant to destroy Plaintiff's reputation, relationship with Plaintiff's son Jerry C. Brow, Defendant falsely accusing Plaintiff with the use of a fraudulent forged document, exercising all control over Plaintiff's minor child from the June 2020 incident of holding defendant's brother's wife Carla captive in her brother's bedroom for five (5) consecutive days turning off Water and Electricity to the bedroom, forcing Defendant's brother Juan to leave food in the city street outside the front door to be given to his wife after inspection of the bags of food by Defendant's father Cesar Salinas Malaga all the while Plaintiff's minor child being forced to be present during this horrific event by the Defendant.  Defendant engaged in actions for her personal benefit, these actions which led up to this complaint being filed are so outrageous in character and so extreme in violation of numerous State and Federal laws in the United States and Peru outlines an extreme degree by the defendant as to go beyond the boundaries of decency. Defendant AKA (Liliana Brow) acted in such a way that either intentionally or recklessly caused the plaintiff emotional distress and financial losses for years.  The conduct was so extreme and outrageous and caused sever emotional distress to the Plaintiff and many others associated with the Defendant including but not limited to Plaintiff's son Jerry C. Brow and grandmother Sally R. Brow.

## AMOUNT IN CONTROVERSY

1.  $1, 585,000.00 USD

## Punitive Damages

3.      The Plaintiff reavers and adopts the foregoing paragraphs, and incorporates the same by reference as if set out fully herein.

1.  DEFENDANT:

2.  engaged in intentional misrepresentations, deceit, fraud, intentional defamation and a complete disregard for laws of the United States of America as a

USA citizen, engaged in smear campaign and vengeful alienation between plaintiff's minor child now age 17 established clear disobedience of numerous court's orders allowing parental rights of the Plaintiff family and friends, destroying Plaintiff's business and reputation with baseless and false accusations, plans to kidnap said minor child and reside in Santa Cruz, Bolivia , all actions of the Defendant with use of the fraudulent, forged document intended to vengefully separate plaintiff from his minor son, since the year 2020 through the day of filing this claim, thereby depriving the Plaintiff of property, past and future income, fatherly rights with said minor child or legal rights, or otherwise causing injury; or

    i.  intentionally did numerous wrongful acts without just cause or excuse, either with an intent to injure the Plaintiff, the Plaintiff's family and business under such circumstances that the law will imply an evil intent; or

    ii.  engaged in conduct which was carried out with a reckless or conscious disregard of the rights or safety of the Plaintiff or the Plaintiff's family, the laws of the United States of America, especially the Michigan State Police or

    iii.  subjected the Plaintiff to cruel and unjust punishment and hardship, emotional devastation in conscious disregard of the rights of a father to his son or the rights of Plaintiff, especially family members to the Plaintiff's son Jerry C. Brow or live a life free from humiliation, and punishment.

    iv.  violated numerous State and federal laws of the USA in absolute disregard to the laws in place to assure that no government symbol would be used for fraudulent purposes, especially the use of unauthorized fraudulent document the Defendant created.

3.      The plaintiff is entitled to punitive damages because Defendants consciously or deliberately engaged in oppression, alienation, fraud, forgery, ongoing defamation, wantonness, or malice with regard to the plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff demands judgment against the defendant as follows:

1.  for a complete cease and desist Order referencing said fraudulent document containing the any Government symbol that does not have clear and proper authorization of the Government or for any further use of the fraudulent document and slanderous remarks by the defendant and any cohorts she may hire or use.

2.  for the damages in the amount of $1,585,000.00 for real and ongoing pain and suffering, loss of income due to defendants cancellation of Plaintiff's business website and the willful utilization of false information and the fraudulent document and court documents defendant created as to statements to alienate, isolate Plaintiffs son Jerry C. Brow from Plaintiff, Plaintiffs mother, grandmother of Plaintiffs son, many family members of the Plaintiff. Retribution to the destroyed family and friend relationships, retribution to a destroyed business relationships since the publication of the Fraudulent document and false statements by Defendant in her diabolical ongoing illegal and unmoral activities since 2020;

for the cease and desist order be registered in the United States of America State Department so that the Defendant cannot use the fraudulent document in any country;

4.   for the equitable relief removing the Defendant from any position of control over said minor Jerry C. Brow a US citizen born in Mississippi USA in whole or in part, or due to as fathers rights for the Plaintiff, in any position in Peru or the USA;

5.   for the actual compensatory damages in the amount of not less than  one million dollars and for the interest on any amount of losses associated with the intentional actions of the Defendant to remove the business website of the Plaintiff and costs associated with all litigations and cases associated where the Defendant used said fraudulent document and slanderous defamations;

6.   Defendant be held responsible for any such violation of laws in the USA including the State of Michigan or constitutional rights afforded to all USA citizens as the Plaintiff or the Country and State by the fraudulent use of such false document by the Defendant which contains un authorized illegal use of such USA government symbols to deceive others for her personal gain.

7.   for punitive damages as allowed by applicable law in an amount set by the court or by special panel to punish the defendant for her wrongful conduct and deter wrongful conduct in the future;

8.   for costs of this action, including any and all reasonable attorney fees, and

9.   for such other, further, and different relief to which the plaintiff may prove himself entitles, or as the Court may deem proper.

**Note: the Defendant will be served personally by process server at the aforementioned  address, or at such other place as may be permitted by law**

Jerry Brow  P.O. Box 1626  Pascagoula, MS 39568
228-372-7433

03/10/2025

19